MORGAN (UNITED STATES v.). See Cases Nos. 15,808 and 15,809.

---

## Case No. 9,810.

### MORGAN v. VAN DYCK.

[7 Blatchf. 147;[1] 11 Int. Rev. Rec. 45.]

Circuit Court, S. D. New York. Feb., 1870.

UNITED STATES—MONEY FOR DISBURSEMENT TO ARMY—ACTION BY DISBURSING OFFICER AGAINST TREASURER.

1. Under the 5th, 6th and 10th sections of the act of August 6, 1846 (9 Stat. 59), and the act of March 3, 1857 (11 Stat. 249), and the two sets of circular instructions issued by the secretary of the treasury on the 27th of May, 1857, and the act of July 17, 1862 (12 Stat. 593), and the circular of the treasury department of October 27, 1862, and the act of May 2, 1866 (14 Stat. 41), and the act of June 14, 1866 (Id. 64), and the circular of the treasury department of November 10, 1866, moneys of the United States placed in the hands of an assistant quartermaster in the United States army, for disbursement by him as a disbursing officer of the United States, and deposited by him with an assistant treasurer of the United States, continue still to be moneys of the United States.

[Cited in U. S. v. Morgan, 28 Fed. 50.]

2. Such assistant treasurer is not liable in assumpsit to such depositor for such moneys.

[3. Cited in U. S. v. National Bank of Republic, 2 D. C. 293, to the point that the United States only can sue a bank which is a designated depository of public moneys for a balance due.]

This was an action of assumpsit [by Robert C. Morgan against Henry H. Van Dyck] tried before the court without a jury.

Horace M. Ruggles, for plaintiff.

Benjamin K. Phelps, Asst. Dist. Atty., for defendant.

BLATCHFORD, District Judge. This suit is brought to recover the sum of $2,321.33, which the plaintiff alleges to be due to him from the defendant, as the balance, in the hands of the defendant, of moneys deposited by the plaintiff with the defendant during the year 1867, subject to draft on demand. At the time of the deposit of the moneys in question, the plaintiff was an assistant quarter-master in the United States' army, and the defendant was assistant treasurer of the United States at the city of New York. The moneys deposited were moneys of the United States, entrusted to the plaintiff for disbursement, as such assistant quarter-master, in payment of claims against the United

States. On the merits, the defendant claims that he paid out the $2,321.33 on drafts or cheques drawn on him by the plaintiff therefor, and the plaintiff claims that such drafts or cheques were some of them forgeries of his signature, and some of them altered to larger amounts than their true amounts. Independently of the merits, however, the defendant claims that there can be no recovery against him in this action.

The 5th section of the act of August 6, 1846 (9 Stat. 59), provides for the appointment of an assistant treasurer of the United States, to be located at the city of New York. The 6th section provides, that every assistant treasurer shall keep safely all the public money at any time placed in his possession and custody, till the same is ordered by the proper department or officer of the government to be transferred or paid out, and, when such orders for transfer or payment are received, faithfully and promptly to make the same as directed, and to do and perform all other duties, as fiscal agent of the government, which may be imposed by that or any other act of congress, or by any regulation of the treasury department made in conformity to law. The 10th section provides, that it shall be lawful for the secretary of the treasury to transfer the moneys in the hands of any assistant treasurer to the treasury of the United States; and, also, to transfer moneys in the hands of any assistant treasurer to any other depositary constituted by the act, at his discretion, and as the safety of the public moneys and the convenience of the public service shall seem to him to require. The act of March 3, 1857 (11 Stat. 249), amends the act of August 6, 1846, by providing that every disbursing officer or agent of the United States, having any money of the United States entrusted to him for disbursement, shall deposit the same with the treasurer of the United States, or with some one of the assistant treasurers or public depositaries, and draw for the same only in favor of the persons to whom payment is to be made in pursuance of law and instructions, except when payments are to be made in sums under twenty dollars; and that, for a failure to safely keep all moneys deposited by any disbursing officer or disbursing agent of the United States, the treasurer of the United States, assistant treasurer and public depositaries shall be held guilty of the crime of embezzlement of said moneys. For the purpose of carrying into effect the provisions of this last-named act, the secretary of the treasury, on the 27th of May, 1857, issued two sets of circular instructions. One of them was addressed to the disbursing officers and disbursing agents employed under the direction of the treasury department, and directs those officers to deposit all public moneys advanced to them for disbursement, in their hands, or which may be remitted to them, with the nearest or most convenient public depositary, to their credit, to be paid out by such public

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

depositary only upon their drafts or cheques in favor of the persons to whom payment is to be made. It further directs, that drafts and cheques upon public depositaries, drawn by disbursing officers or disbursing agents, shall not be returned to them after payment, but be held by the depositary subject to the order of the treasury department, and that the disbursing officer or disbursing agent shall be furnished, on application to the depositary, but not more frequently than once a month, with an official statement of his deposit account. The other set of circular instructions was addressed to the assistant treasurers and other public depositaries, and directs, that whenever any money shall be offered for deposit with them by any disbursing officer or disbursing agent of the United States, they shall receive it, and place the amount to the credit of such officer or agent on their books, subject to the drafts or cheques of such officer or agent only in favor of the persons to whom payment is to be made. It also directs that, whenever any disbursing officer or disbursing agent shall die or resign, or be superseded or removed, further payment of his drafts or cheques shall be at once stopped, and states that specific instructions will be given in such cases as to the payment of outstanding cheques and the disposal of the balance deposited to the credit of such officer or agent. It also contains directions as to furnishing the disbursing officer or disbursing agent, on request, with statements in detail showing the sums received for his credit, and the amounts paid out on his drafts or cheques, and directions that the drafts or cheques shall not be returned to the disbursing officers or disbursing agents after payment, but shall be kept in such manner as to be accessible if required by the accounting officers in the adjustment of the accounts of such officers or agents. On the 17th of July, 1862, an act was passed (12 Stat. 593), providing, that any officer or agent of the United States who shall receive public money which he shall not be authorized to retain as salary, pay or emolument, shall render monthly accounts thereof to the proper accounting officer of the treasury, and shall, in default thereof, be deemed a defaulter, and be subject to all the penalties prescribed by the 16th section of the act of August 6, 1846. By a circular issued by the treasury department on the 27th of October, 1862, and addressed to the assistant treasurer at New York, the attention of that officer is called to the act of July 17, 1862, and a strict compliance by him with the requirements of that act is enjoined upon him. By the act of May 2, 1866 (14 Stat. 41), it is provided, that all moneys represented by cheques or drafts issued by any disbursing officer of any department of the government of the United States, upon any assistant treasurer, where such moneys are represented on the books of the assistant treasurer as standing to the credit of such disbursing officer, and such drafts shall have

been dated before July 1st, 1863, and shall have been issued in liquidation of a debt due from the United States, and shall remain outstanding on the 1st of July, 1866, shall be deposited by the treasurer of the United States, to be covered into the treasury by warrant, and that the like course shall be pursued, at the close of every fiscal year, in respect to all drafts and cheques which shall then have remained outstanding for three years or more. The act of the 14th of June, 1866 (14 Stat. 64), provides, that it shall be the duty of every disbursing officer of the United States having any public money entrusted to him for disbursement, to deposit the same with the treasurer or some one of the assistant treasurers of the United States, and to draw for the same only as it may be required for payments to be made by him pursuant to law, subject to the power of the secretary of the treasury to specially authorize such public money to be deposited or kept otherwise, under certain circumstances. This act provides for the punishment, as a felony of a violation of its provisions. On the 10th of November, 1866, a circular was issued by the treasury department, amending the circular of May 27th, 1857, by providing, that cheques drawn by disbursing officers or disbursing agents, who may die, resign, or be superseded or removed, shall be paid from funds on hand to their credit, unless the same have been drawn more than four months before their presentation, or there are reasons for suspecting fraud, or circumstances which would lead a judicious officer to decline to pay the same.

It is quite apparent, from these provisions of law and these regulations made by the treasury department, that moneys of the United States which were placed in the hands of the plaintiff for disbursement by him as a disbursing officer of the United States, were not the less public moneys belonging to the government of the United States, after they came to the hands of the plaintiff, and after they were deposited by the plaintiff, as such disbursing officer, with the defendant, as assistant treasurer of the United States, than they were before they reached the hands of the plaintiff. The moneys were never the property of the plaintiff. He is bound, indeed, to account for them to his superior officer; but, if he shows that he has, in compliance with the laws and the regulations, deposited them with a designated depositary, and that he has not withdrawn them from the custody of such depositary, he does account for them. To an action brought against him by the United States for such moneys, it is a complete defence for him to show such a state of facts. If, as was suggested at the trial, the plaintiff has paid a second time into the treasury of the United States the moneys which he so deposited with the defendant, that circumstance alone cannot create in favor of the plaintiff against the defendant a right of action which did not otherwise exist. The

moneys were not voluntarily deposited by the plaintiff or voluntarily received by the defendant. There was nothing in the nature of a contract or agreement between the parties, which could be broken so as to lay a foundation for an action of assumpsit. For a breach of duty by the defendant in not paying genuine drafts by the plaintiff for moneys deposited, the defendant is responsible only to the common superior of both parties—the United States. The obligation of the defendant was created by law and not by contract and was an obligation to the United States and not to the plaintiff. I find for the defendant and direct a judgment to be entered in his favor, with costs.